# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
July 9, 2013 Session

## MIKE LOCKE AND CVAN AVIAN v. THE ESTATE OF DAVID ROSE

**Appeal from the Circuit Court for Davidson County**
**Nos. 10P-869 and 12P-291      David Randall Kennedy, Judge**

**No. M2012-02508-COA-R3-CV - Filed June 30, 2014**
**No. M2012-01314-COA-R3-CV - Filed June 30, 2014**

## MIKE LOCKE AND CVAN AVIAN v.
## THE ESTATE OF THOMAS W. SCHLATER, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 11P-756      David Randall Kennedy, Judge**

**No. M2012-02504-COA-R3-CV - Filed June 30, 2014**

After the death of David Rose, his two putative non-marital sons became involved in three separate lawsuits related to the proper distribution of his property. When Mr. Rose's Executrix filed to probate his Will in solemn form, the putative sons, who were named residuary beneficiaries, objected, but later withdrew their objection. They then filed suit to set aside a 2006 Trust Agreement in order to reinstate prior trusts, the assets of which were to be distributed to Mr. Rose's issue at his death. They also filed a separate lawsuit to establish Mr. Rose as their biological father. Their attempts to obtain some of their father's assets were all unsuccessful. In all three cases, the trial court held that they were barred from establishing a father-son relationship because their attempts were time barred. We affirm the trial court's dismissal of the sons' petition to establish paternity filed in the probate case two years after the order admitting the will to probate. However, we reverse the trial court's dismissal of the petitioners' complaint challenging the validity of the 2006 Trust Agreement because they have standing to attempt to establish that they are "issue" of Mr. Rose. The deadline imposed by the trial court applied only "for purposes of intestate succession," and the trust case did not involve inheritance through the statute regarding heirs of a person dying without a will. Mr. Rose had a will, which was probated. Any assets to be distributed to Mr. Locke and Mr. Avian from the preexisting trust(s) would be pursuant to the terms of the trust document(s), not

pursuant to intestate succession. For the purpose of establishing their interest in the prior trust(s), the purported children were entitled to present proof that they were the children of Mr. Rose and were not time barred.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Nos. M2012-02508-COA-R3-CV and M2012-01314-COA-R3-CV, Reversed in No. M2012-02504-COA-R3-CV**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Angello L. Huong, Lebanon, Tennessee, for the appellants, Mike Locke and Cvan Avian.

Andra J. Hedrick, Robert J. Hazard, Nashville, Tennessee, for the appellee, Louise R. Herbert, Executor of the Estate of David Rose.

## OPINION

David Hughes Rose died at the age of sixty-three on April 15, 2010. After his death, Mike Locke and Cvan Avian became involved in three separate cases in which they asserted interests in his property. Mr. Locke and Mr. Avian are the adult putative children of Mr. Rose, born out of wedlock to two different mothers. Mike Locke's mother, Deborah Grace Harding, was never married to David Rose. Mr. Locke's birth certificate names Grover Joe Locke as his father. Cvan Avian's mother, Mary Sue Upchurch, was married to David Rose for a time, but they divorced before Cvan Avian was born, and the mother married Christopher Van Brown, who is listed on Mr. Avian's birth certificate as his father.

Mike Locke and Cvan Avian insist that they are the biological children of David Rose, that DNA evidence confirms that relationship, and that Mr. Rose treated them as his children during the later years of his life. However, neither they nor Mr. Rose took any steps to establish Mr. Rose's paternity prior to his death, and the common thread running through all three cases discussed in this opinion is the question of establishing paternity.

–2–

# I. PETITION TO PROBATE WILL

Mr. Rose had executed a last will and testament that named his sister, Louise Rose Herbert, as his executrix. Ms. Herbert was a named beneficiary of several specific bequests, including a grandfather clock, a Longines watch, and "[a]ny condominium I may own at the time of my death." Mr. Locke and Mr. Avian were named as beneficiaries as well, and were bequeathed in equal shares, "all the rest of my clothing, jewelry, automobiles, and all other tangible personal property (except cash on hand or on deposit, which is devised later) owned by me at the time of my death."

The will also named Mr. Locke and Mr. Avian as Mr. Rose's residuary beneficiaries. However, the residuary clause had a specific exclusion: "this devise does not include the assets of an irrevocable trust; Thomas Schlater, Mary Schlater Stumb and Louise Rose Herbert, Co-Trustees for my benefit."

On June 4, 2010, Louise Herbert filed a petition in the Seventh Circuit (Probate) Court of Davidson County to admit Mr. Rose's Will to Probate in Solemn Form. The petition listed all of Mr. Rose's beneficiaries under the will and his heirs at law, and identified the relationship between Mr. Rose and each individual. Mr. Locke and Mr. Avian were listed as Mr. Rose's putative sons. Ms. Herbert was listed in the same document as Mr. Rose's sister, Mary Schlater Stumb as his half-sister, and Thomas Schlater as his half-brother. The case was given the docket number 10P-869.

Mr. Locke and Mr. Avian responded to the petition on July 13, 2010 by filing an "Objection to Probate in Solemn Form and Complaint to Contest/Construe Will." In their objection, each respondent referred to himself as "the biological son of the deceased David Rose." That specific reference in their objection is central to their arguments on appeal. Mr. Locke and Mr. Avian did not allege that the will itself was invalid, but only that the provision excluding the trust "was procured by undue influence, breach of confidential relationship, self-dealing, and/or at a time when the deceased was of unsound mind."

The hearing on the probate petition was conducted on September 2, 2010. The evidence established that all formalities for execution of the Will were observed and that there was no indication that Mr. Rose had been coerced to sign it or was not of sound mind.

–3–

At the conclusion of testimony, the trial court asked the attorney for Mr. Locke and Mr. Avian if he wanted the court to certify the case as a will contest. The attorney declined and withdrew his request to have the will probated in common form. He explained that he only wanted to preserve his clients' right to contest the validity of the trust referenced in the will and that he intended to file a separate suit to revoke the trust and bring its assets back into the estate. The trial court stated that as beneficiaries of the will, Mr. Locke and Mr. Avian had standing to ask the court to construe its meaning, but that because the trust was established as a separate entity, its validity could not be challenged in a will contest. The court then entered an order on the same day admitting Mr. Rose's will to probate in solemn form and appointing Ms. Herbert as the personal representative of the estate.

## II. CHALLENGE TO TRUST AND ACTION TO ESTABLISH PATERNITY

The next action to be filed by Mr. Locke and Mr. Avian was a complaint filed February 25, 2011, in which they asked the court to set aside the David Rose Trust Agreement of 2006 and to declare it null and void. The named defendants were the trustees, Thomas Schlater, Mary Schlater Stumb and Louise Rose Herbert, as well as six other beneficiaries under the trust. On motion of the defendants, the case was transferred to the Seventh Circuit (Probate) Court of Davidson County and was given the case number 11P-756.

In the complaint, the Plaintiffs recited once again that they were the biological children of David Rose, that David Rose had been the beneficiary of at least two trusts left to him by his parents, and stated "upon information and belief" that they were the contingent beneficiaries of those trusts in the event that David Rose passed away. They further stated that the execution of the David Rose Trust Agreement of 2006 deprived them of their interests in the prior trusts and transferred those interests to Ms. Herbert and to the children of Ms. Stumb and Mr. Schlater. The plaintiffs alleged that Mr. Rose was coerced by the defendants into signing the 2006 trust agreement, that because of numerous mental, psychological and health problems, he lacked the mental capacity to execute the document, and that the defendants were guilty of self-dealing, breach of a confidential relationship and/or undue influence.

The defendants filed an answer and an amended answer in which they denied that Mr. Locke or Mr. Avian had any interest in the two prior trusts. They also denied that David Rose lacked the capacity to execute the 2006 conveyance or that they were guilty of any wrongdoing in regard to its execution. They additionally asserted as affirmative

–4–

defenses that neither plaintiff was the legal issue of David Rose, that no legal parent-child relationship had ever been established between him and them, and therefore that Mr. Locke and Mr. Avian lacked standing to pursue their claims, and that their claims were barred by the statute of limitations and by laches.

With the trust case still pending, Mike Locke and Cvan Avian filed a Petition to Establish Paternity on February 21, 2012, naming the Estate of David Rose as defendant. The Petition was given the case number 12P-291. It set out in some detail the history of the relationship between Mr. Rose and their mothers, including the roles of the other men who were named as their fathers on their birth certificates. It alleged that at various points in his life, Mr. Rose had publicly held out the two men as his sons and it described some incidents where other family members appeared to acknowledge the relationship. It also asserted that DNA testing had confirmed Mr. Rose's paternity to a high degree of certainty.

Ms. Herbert, acting as executor of the estate filed a motion to dismiss the Petition to Establish Paternity. She contended that the petition was untimely filed, asserting that under statutory and case law, individuals born out of wedlock who wish to establish the legal relationship of parent and child after the death of their putative father have a limited time frame within which to do so. The court agreed with Ms. Herbert and granted the motion to dismiss in an order entered on May 15, 2012. After the trial court denied a motion to reconsider, Mr. Locke and Mr. Avian appealed.

Perhaps because of the dismissal of their petition to establish paternity, Mr. Locke and Mr. Avian filed a "Motion for Summary Judgment,"on July 30, 2012, under the docket number of the probate case, 10P-869, asking the trial court to rule that "the Petitioners are, indeed, the biological children of David Rose." Their motion was filed almost two years after the order admitting Mr. Rose's will to probate had become final. The motion was accompanied by a statement of material facts and a memorandum of law that asserted that DNA tests performed after the death of Mr. Rose resulted in findings of greater than 99% probability that Plaintiffs were the offspring of Mr. Rose and were brothers to each other.

Ms. Herbert responded by filing a motion to strike the summary judgment motion. After a hearing, the trial court granted the motion to strike, ruling that because the matters before the court in case 10P-869 had been fully and finally adjudicated, that case did not provide any basis for decision on Plaintiffs' motion. The court stated that it was not making any findings as to the truth of Plaintiffs' factual allegations, or any findings or

rulings in any matters previously heard by the court or pending under other docket numbers. Mr. Locke and Mr. Avian filed a notice of appeal.

The defendants filed a motion for summary judgment in the trust case, contending that the plaintiffs lacked standing to challenge the trust. The motion incorporated a memorandum which included a history of all the trust agreements relevant to this case. The earliest of those agreements established the Mary Hughes Rose Family Trust in 1964. Under that agreement and several successor agreements, the trust assets were to be divided equally among the three children of Albert and Mary Rose, including David Hughes Rose. One common provision in those agreements was that if any of the children died before the trust was terminated, surviving issue of a deceased child were to share equally in the deceased parent's of the remaining trust assets.

The defendants noted that to have standing to contest the existing trust, the plaintiffs would have to show that if it were overturned or held to be invalid, they could reclaim some beneficial interest in the trust property. The defendants further argued that the plaintiffs could not show any such beneficial interest because they had not successfully established that they were the surviving issue of David Rose. The defendants pointed out that the two plaintiffs were born out of wedlock and that no adjudication of paternity occurred the lifetime of David Rose, and they further contended that the Plaintiffs did not seek an adjudication of paternity in a timely manner after his death.

The plaintiffs responded by pointing out that they had filed an objection on July 13, 2010 in the earlier probate proceeding in which they stated that they were the biological children of David Rose. They contended that such an assertion of paternity was timely and that they had standing as surviving issue of the predecessor trusts.[1]

The trial court conducted a hearing on the summary judgment motion on September 28, 2012. The court ruled from the bench in favor of the defendants and granted them summary judgment in an order filed on October 29, 2012.

---

[1] Plaintiff Cvan Avian also asserted that because David Hughes Rose and his mother had been married and his birth had occurred within 300 days of their divorce, he was entitled to a presumption of paternity under the provisions of Tenn. Code. Ann. § 36-2-304(a)(1).

### III. TIME LIMITS AT ISSUE

As briefed by the parties, the operative question in all three appeals is not whether Mr. Locke and Mr. Avian are in fact the biological children of David Rose, but rather whether they asserted his paternity within a time frame and in a manner that comports with the controlling law. This is purely a question of law, and therefore our review of the record is *de novo*, without according any presumption of correctness to the conclusions of the trial court. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

The trustees and estate base their position that Mr. Locke and Mr. Avian are barred from establishing their paternity as to the decedent, Mr. Rose, on a statute and on case law interpreting that statute: Tenn. Code Ann. § 31-2-105(a) and *Bilbrey v. Smithers,* 937 S.W.2d 803 (Tenn. 1996) and *Glanton v. Lord*, 183 S.W.3d 391 (Tenn. Ct. App. 2005). Mr. Locke and Mr. Avian rely on different interpretations of the same statute and cases. However, the statute and the cases specifically address only inheritance rights of non-marital children by intestate succession.

By its terms, the statute applies "for purposes of intestate succession." Tenn. Code Ann. § 31-2-105(a). In that context, non-marital children may inherit from or through their biological father by intestate succession if "paternity is established by an adjudication before the death of the father **or is established thereafter** by clear and convincing proof." Tenn. Code Ann. § 31-2-105(a)(2)(B) (emphasis added).

The above statute required judicial interpretation because it did not specify exactly how much time after the death of a father his putative children should be allowed to have to obtain an adjudication of paternity "by clear and convincing proof." The Tennessee Supreme Court determined that the term "thereafter" could not be unlimited or uncertain, for if it were, it could disturb **rights of inheritance** that had already vested in the decedent's other heirs. *Bilbrey v. Smithers*, 937 S.W.2d at 807. The court concluded, after considering the law of real property, of intestate succession, and of equal protection, that the best approach would be to tie the time limits applicable to the establishment of paternity by non-marital children to those applicable to creditors of the decedent's estate. *Bilbrey v. Smithers*, 937 S.W.2d at 808.

Under current law, creditors must file claims against the estate of a decedent within four months of the date on which the statutorily-required Notice to Creditors is published or posted, or else their claims are forever barred. *See* Tenn. Code Ann. § 30-2-

–7–

306(b) and § 30-2-307(a). If the creditor does not receive actual notice of the Notice to Creditors, the creditor may not be bound by the four-month deadline, but must still file a claim within one year of the date of the decedent's death in order for the claim to be adjudicated. The *Bilbrey v. Smithers* court declared that these same deadlines should apply to claims of paternity by putative children in attempts to share in the estate of an intestate father.

In *Glanton v. Lord,* this court observed that while creditors of an estate are required to file their claims within the statutory four-month period, there is no statutory deadline for reaching a final resolution of creditors' claims, and that it is unrealistic to expect a final adjudication of paternity to be issued within that brief period. "*Bilbrey v. Smithers* requires only that non-marital children 'assert the right to inherit' in some proceeding leading to a 'judicial determination' of paternity." *Glanton v. Lord*, 183 S.W.3d at 397 (citing *Bilbrey v. Smithers*, 937 S.W.2d at 807-08).

More significantly, perhaps, the *Glanton* court also determined that the assertion of paternity need not be made in a particular proceeding or in any particular form. Instead, a non-marital child "seeking to inherit by intestate succession from or through his or her father" may raise the issue of paternity "and a corresponding right to inherit" in some proceeding which affords the other putative heirs notice and an opportunity to be heard on the issue. *Glanton*, 183 S.W.3d at 397.

It is undisputed in this case that David Hughes Rose died on April 15, 2010, that Notice to Creditors in respect to his estate was first published on September 10, 2010, and that Mr. Locke, Mr. Avian and their attorney were served with a complete copy of the Notice to Creditors on September 22, 2010. Based on these facts, the trial court found that the four-month deadline for creditor claims was January 10, 2011, and the one-year deadline was April 15, 2011.

None of these appeals involves intestate succession.

### IV. THE PROBATE CASE

The first case on appeal is the probate case. As discussed earlier, the Executrix of Mr. Rose's Estate filed a Petition to Admit his Will to Probate in Solemn Form. Mr. Locke and Mr. Avian filed an Objection to the Petition and Complaint to Contest/Construe Will. In that objection, each asserted that he was "the biological son of the deceased David Rose" and that the Will devised all of Mr. Rose's residuary estate to

them except for the assets of an irrevocable trust.

Mr. Locke and Mr. Avian alleged that the provision excluding the trust assets was procured by undue influence, breach of a confidential relationship, or at a time when Mr. Rose was of unsound mind. They further alleged that they would have received the assets of the trust but for the acts of the trustees, who failed to act in Mr. Rose's interests, but rather acted for their own gain. Finally, they asserted that they filed the Objection and Complaint to "preserve their right to object and contest the deceased's Last Will and Testament, for the limited purpose of any matters involving the deceased's trust(s)." They did not object to other specific bequests. The Objection and Complaint was filed on July 13, 2010, three months after Mr. Rose's death.

At a hearing on September 2, counsel for Mr. Locke and Mr. Avian withdrew their objection to admission of the Will to Probate in Solemn Form. In the discussion between the trial court and both counsel, it was made clear that Mr. Locke and Mr. Avian simply wanted to retain their right to seek construction of the Will's provision excluding trust assets. Both the trial court and opposing counsel agreed that while the withdrawal of their objection to admission of the will to probate eliminated their opportunity to challenge the will, Mr. Locke and Mr. Avian retained the right to ask the court to construe a provision.

The trial court stated that the opportunity to seek construction of the provision was preserved, but that a request to interpret a will provision was not a will contest.

> All we're doing today is finding that this will and all its particulars are being admitted to probate in solemn form. So contesting the language will be over. Asking the Court to construe what it means will not be over and if called upon to construe that in a timely fashion, the Court will in fact do so.

An Order Admitting Will to Probate in Solemn Form was entered September 2, 2010. Almost two years later, Mr. Locke and Mr. Avian filed a Motion for Summary Judgment asking the court to determine that they were in fact the biological children of David Rose. They asserted there were no disputes of fact and filed a statement of undisputed facts and memorandum of law.

The Executrix filed a motion to strike the Motion for Summary Judgment. The trial court granted the motion and found that counsel for Mr. Locke and Mr. Avian had earlier withdrawn the Objection and, consequently, there were no claims remaining for adjudication. "The withdrawn Objection did not reference Tennessee

Code Annotated Section 31-2-105, the statute which applies to actions for adjudication of paternity," and at no time had anyone commenced an action for paternity under the docket number of the Probate case.

Accordingly, the trial court granted the Executor's motion and struck all Summary Judgment filings. The court stated it was making no finding as to the factual allegations in the Objection or the Summary Judgment Documents and was making no finding or ruling as to any matters previously heard or pending in two other cases, with different docket numbers. (The two other cases were the Trust case, filed February 25, 2011, and the Paternity case, filed February 21, 2012.). The court declared its order, entered August 27, 2012, to be a Final Judgment.

Nonetheless, less than two weeks later, Mr. Locke and Mr. Avian filed a Petition to Establish Paternity in the Probate case. The Petition alleged facts to demonstrate that they were the biological sons of Mr. Rose, and asked the trial court to find David Rose "through his estate" to be the biological father of both petitioners.

The trial court entered another Final Judgment granting the Executrix's Motion to Dismiss the Petition. The court found that the petitioners' paternity was not adjudicated during the life of Mr. Rose; that Mr. Rose died on April 15, 2010, and that both the four-month and the one-year deadline for filing creditor claims had expired before the Petition to Establish Paternity was filed. The court held that the Petition was not timely filed and, as a matter of law, must be dismissed.

Relying on *Glanton*, Mr. Locke and Mr. Avian argue that they timely asserted their right to inherit by stating in their July 13, 2010, Objection that each was "the biological son of the deceased David Rose." The estate responds by pointing out that nowhere in their objection did Mr. Locke and Mr. Avian ask for an adjudication of paternity.

Mr. Rose died testate; he had a will. The case was initiated to admit his Will to probate. Mr. Locke and Mr. Avian were named residuary beneficiaries in the Will. They would therefor inherit under the Will, whether or not there was an adjudication that Mr. Rose was their biological father. The question of paternity was simply not at all relevant to the proceedings to probate the Will.

Only if the Will were set aside and the assets of the estate distributed under the laws of intestate succession would there be a need for a judicial determination of

−10−

paternity. The validity of the Will, or any provision of it, was no longer in question after Mr. Locke and Mr. Avian withdrew their objection to the probate of the Will in solemn form.

The Will was probated on September 2, 2010, and any issue as to whether Mr. Rose was the father of Mr. Locke and Mr. Avian became moot, or irrelevant, at that point. Thus, the trial court correctly dismissed their Petition to Establish Paternity filed in the Probate case almost two years after the admission of the Will to Probate in Solemn Form.

Although we have determined that dismissal was appropriate for different reasons from those relied upon by the trial court, our determination does not necessitate consideration of the issues raised regarding the timeliness and method of asserting paternity.

## V. THE TRUST CASE

After the Will was admitted to probate, but before the Mr. Locke and Mr. Avian attempted to have their paternity determined in the Probate case, they sued the three trustees and the beneficiaries of the David Rose Trust of 2006 in a Complaint filed February 25, 2011.

The 2006 David Hughes Rose Trust Agreement was funded with Mr. Rose's share of assets from predecessor trusts established by his parents, Albert and Mary Rose. The 2006 Agreement provided that upon the death of Mr. Rose the Trust would terminate and the assets would be distributed to the Trustees and/or their children *per stirpes*. The predecessor trust(s) had provided that upon the death of Mr. Rose, the trust assets would be distributed to his "issue" or, in one case, to his "legitimate issue."

The Complaint alleged that Mr. Rose did not have sufficient mental capacity to sign the 2006 Trust Agreement; that the Trustees breached their fiduciary duty to Mr. Rose, exerted undue influence on Mr. Rose for the benefit of themselves and their children, and engaged in self-dealing by having themselves and their children named as beneficiaries of the Trust when they were Trustees; and that the 2006 Trust Agreement violated spendthrift provisions of the earlier trusts. The Complaint also sought a declaratory judgment that Mr. Locke and Mr. Avian were entitled to the assets in the trusts of Albert and Mary Rose as well as those in the 2006 David Rose Trust Agreement.

The trial court dismissed the Complaint on the basis that Mr. Locke and Mr. Avian

lacked standing because they had not timely established by adjudication that Mr. Rose was their biological father. The court found that the Complaint had not been filed within the four month time limit for creditor claims. Therefore, the time for them to establish themselves as the issue of Mr. Rose had expired.

In order to have standing to challenge a trust, the challenger must show that he or she would benefit from having the instrument set aside. *Jennings v. Bridgeford*, 403 S.W. 2d. 289 (Tenn. 1966). Persons who have standing to challenge a trust or will include those who would take a "significant share" of the assets if the instrument is set aside. *See Jolley v. Henderson,* 154 S.W.3d 538 (Tenn. Ct. App. 2004). Among those with standing to challenge a trust are those who can show that a significant share its assets would pass to them if the trust were set aside. *See In re Estate of Corbin*, 66 S.W.3d 84, 90 (Mo. Ct. App. 2001); *Matter of Ransom,* 433 A.2d 834, 838 (N.J. Superior 1981).

Thus, in the case before us, Mr. Locke and Mr. Avian would have standing to challenge the 2006 Trust Agreement if they would benefit by having it set aside. That comes down to whether they are "issue" of Mr. Rose.

"Issue" means, generally, all persons who have descended from a common ancestor, lineal descendants. *Presley v. Hanks*, 782 S.W.2d 482, 488 (Tenn. Ct. App. 1989). Unless specifically indicating otherwise, the use of "issue" includes non-marital children. *Presley*, 782 S.W.2d at 489 (holding that testator's use of "lawful issue" included only those born during a marriage and was the equivalent of legitimate). Who is or is not "issue" can be determined without reference to the marital status of an individual's parents. *Id*.

Thus, if Mike Locke and Cvan Avian are indeed the biological children of David Rose, then they are also his surviving issue. The trustees do not dispute that nonmarital children are included in "issue." Surviving issue would have standing to challenge the Trust Agreement of 2006. There appears to be no dispute that if the 2006 Trust Agreement were voided, the predecessor trust(s) would become effective.

The trial court in essence ruled that Mr. Locke and Mr. Avian did not have standing to establish that they were the biological sons of Mr. Rose and thereby attain standing to challenge the Trust. In so ruling, the trial court applied *Bilbrey v. Smithers* and the statute it interpreted. As explained earlier, the time limitations established in *Bilbrey* apply to inheritance rights of nonmarital children by intestate succession. This appeal arises from a suit to set aside a Trust Agreement, and intestate succession is not

involved.

In other words, Mr. Locke and Mr. Avian, if they successfully set aside the 2006 Agreement, would be entitled to a distribution of the trust assets because of the terms used in the trust agreements and not because of the provisions of intestate succession laws.

The statutes and case law that have created time limits for establishing paternity in cases involving intestate inheritance do not directly apply in this case. Tennessee Code Annotated 31-2-105(a), discussed earlier, is codified in the title of the code which governs the administration of estates and it specifically applies "for purposes of intestate succession." We see no reason why the rules governing the administration of decedents' estates and intestate succession should preclude the court from considering the challenge to the validity of the trust. There is no authority requiring that the same limitations for intestate succession of nonmarital children apply in a case brought to challenge or construe a trust.

We note that Tenn. Code Ann. § 28-3-102 provides that actions against the personal representative of a decedent shall be brought within seven years after the death of the decedent; Tenn. Code Ann. § 28-3-109(a)(3) provides that actions on contracts not otherwise expressly provided for shall be brought within six years after the accrual of the cause of action; and Tenn. Code Ann. § 28-3-110(3) provides that actions on all other cases not expressly provided for shall be brought within ten years.

Any action against individuals acting as trustees must be commenced within six years of the accrual of the cause of action. *Clark v. Am. Nat. Bank & Trust Co. of Chattanooga*, 531 S.W.2d 563, 567 (Tenn. Ct. App. 1974) (citing *Third National Bank in Nashville v. Nashville Trust Co.*, 232 S.W.2d 7 (Tenn. 1950)). Also, "the statute of limitations does not run between the trustee and the cestui que trust as long as the trust subsists." *Third National Bank in Nashville v. Nashville Trust Co.*, 232 S.W.2d at 10-11.

The David Rose Trust Agreement of 2006 was executed on December 4, 2006. The Complaint to set aside that Trust Agreement was filed February 25, 2011. The plaintiffs allege they did not know of the existence of the 2006 Trust Agreement until May of 2010, when the attorney for the estate provided it to them after Mr. Rose's death.

Thus, the complaint filed on February 25, 2011, to challenge the 2006 Trust Agreement was timely. We therefore conclude that Mr. Locke and Mr. Avian are entitled

−13−

to present proof as to their status as "surviving issue" under the prior trust(s) so as to establish standing.

We therefore reverse the trial court's dismissal on summary judgment of the complaint in case number 11P-756.

**VI.**

The third lawsuit, in which Mr. Locke and Mr. Avian sought to establish paternity, was also dismissed by the trial court on the basis of the same time limitations. The issues in that case are pretermitted by our decision in the Trust case.

We affirm the trial court's judgment in appeal No. M2012-02508-COA-R3-CV and No. M2012-01314-COA-R3-CV. We reverse its judgment in appeal No. M2012-02504-COA-R3-CV. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary, including the determination of whether Mr. Locke and Mr. Avian are surviving issue of Mr. Rose.

_____
PATRICIA J. COTTRELL, JUDGE